and we have Mr. Smith for the state and we have Helen to waive and you may proceed. Thank you Justice Shetland. May it please the court. My name is Timothy James T. and I represent the people of the state of Illinois. Your Honor, in my time before you today, I will show you why the trial court's decision to dismiss the defendant's post-conviction petition at the second stage of the Post-Conviction Hearing Act was indeed proper. Now, I know that my opposing counsel is waiving, but there are a few arguments in her reply brief that I'd like to respond to and clarify any questions or concerns this court may have. And the first issue is that the trial court dismissed the defendant's post-conviction petitions for untimeliness. And the defendant properly states that the defense of untimeliness is an affirmative defense that can be waived by the state. Now, the trial court specifically stated that the untimeliness defense was not waived by the state. And I quote from the record, from the trial court's decision, motions and petitions are presented in the court being fully advised, defiance, and orders as follows. The defendant's first petition was filed August 2004. The decision of the appellate court herein on direct appeal was entered 2003. The petition should have been filed no later than April 2004. The late filing was not waived by the state nor excused by any claim or argument from the defendant. Now, the defendant – and you can find that on page 397 of the record. Now, the defendant had this court believe that the state, in fact, did waive the actual post-conviction petition. He points directly to a conference that the trial court had with him on page 300, 704 of the record. On this particular conference, what happened was that the trial court stated, for what it's worth to – I also note that there was a question about the filing dates here. Did you want to make any comment on that? The state's attorney then stated, no, Your Honor. While the state's attorney was stating that, the court then spoke over the state's attorney and said, on the – which is marked by hyphens. So clearly the court was typing so fast that she had to use hyphens to indicate that there was some back and forth between the trial court that they were both talking over each other. Again, the state's attorney then states, I believe that there was hyphen, and then there's another hyphen that comes from the court, which then says, I think that this came up in a previous discussion that there was – and then they continue to say that there was a hearing in which the untimeliness defense was actually raised by the state. The defense states that the words by the state's attorney, no, Your Honor, indicate that the state waived it. However, clearly the context of the record, as you can find in 704, shows that the state's attorney did not, in fact, waive it, but was having an interchange between the trial court where at first it was saying no, but then it was talking with the trial court about a previous hearing. Now, I want to direct this court specifically to the various hearings in which that could have been raised but are not used in the record on appeal. On page 237, 414, there was a November 23, 2004 court appearance in which there was no transcript of the hearing. On January 5, 2005, there was a court appearance on 240 and – 415 of the record. Again, there is no transcript of this hearing. On June 2, 2005, there was another court appearance on 250 and 415 of the record. All of those court hearings are ones in which the state's attorney could have raised that issue, but we do not have the record on appeal to substantiate that it, in fact, did. All we have is the court's inkling, trial court's understanding that there was a previous discussion, and then the trial court's order which states specifically that the defendant did not – or the trial – state's attorney did not weigh that defense. Therefore, at the very minimum, at the most favorable review for the defense, what we can state is that the record is ambiguous, and if it is ambiguous, we must go with the rule of law. The Illinois Supreme Court has long held that, and I quote, an appellant bears the burden of presenting an adequate record to support his claim of error.  Again, the Illinois Supreme Court states definitively, any doubts that may arise from the incompleteness of the record will be resolved against the appellant. As the Shelton Court stated, judges are not like pigs, hunting for truffles buried in briefs. Surely, if the defendant wants to claim that there was an affirmative defense of untimeliness, then it could be – it should be clearly delineated in the record. At the most favorable review of this record, even under de novo standard, the only thing that we can state is that it is at least ambiguous, and that must be resolved in favor of the state. And the second argument the defense raises is that his – the trial court made improper credibility determinations at that stage. And what apparently happened was that there was a gang of co-defendants where they had filed this post-conviction petition timely. So he had his post-conviction already in the third-stage hearing before this post-conviction petition came on from this defendant. And in that post-conviction petition, he attached an affidavit from co-defendant Emanuel Wade. And Emanuel Wade stated various things that he had made up his testimony, that he had testified falsely against co-defendant Sullivan. The trial court had a third-stage hearing, made credibility determinations, and found that Emanuel Wade was, in fact, lying, that he was a not credible witness. Now, Emanuel Wade has the same affidavit to the defendant's post-conviction petition. The only difference here is that instead of saying Johnny Sullivan, it stated Jesse Smith, the defendant in this case. The trial court let the defendant and the state supplement the record with a third-stage hearing in Johnny Sullivan's post-conviction petition. Both of them did not contest it. And you can find that on page 398. Both the defense and the state agreed that the supplemental record of Johnny Sullivan's third-stage post-conviction hearing should, in fact, supplement the record. The trial court then looked at that supplemental record to see whether there was a credibility determination of Mr. Sullivan or of Mr. Wade. Now, granted, it is a long-self-held rule of law that at the second stage, the trial court is precluded from making credibility determinations. However, that does not mean that they are precluded from making foregone conclusions that are based within the record. And the supplemental record shows that Emanuel Wade's affidavit was not credible, and the trial court was properly entitled to do that within its discretion. Particularly, Mr. Wade raises various things, such as Wade's affidavit said that the state had insisted I go along with these malicious acts by using threats of a death sentence. You can find that on 233 in his affidavit. However, in the third-stage hearing of the co-defendant on the supplemental record on page 19, there's a specific question asked. No one from the state told you that they were seeking the death penalty. Is that correct? Emanuel Wade responds, yes, sir. Clearly, it's completely contradicted from what his affidavit states. Again, Emanuel Wade's affidavit says, I was pressured by the prosecution as well as manipulated by my attorney, Stephen Griffin, to go along with a scheme to convict Jesse Smith. However, in, again, the supplemental record on page 22, it states, so what you're saying is that the testimony that you gave to Johnny Sullivan's trial was wrong and error. Emanuel Wade's response, it is completely false. Completely false. Totally false. Yes, totally false. And the state knew or should have known that? Emanuel Wade's answer, I cannot blame the state for something they may or may not have known. Surely, if Emanuel Wade is going to state that he was pressured by the state to convict the defendant, but then he cannot blame the state for what they may or may not know, that is a contradictory statement. Clearly within the record. Therefore, the trial court was perfectly entitled to make a foregone conclusion that the credibility determinations in the third stage hearing and supplemental record was sufficient to preclude the defendant from going on to a third stage hearing. If we were to allow this to happen, then even when it's clearly from the supplemental record that there was – the affidavit is incredible, the trial court would still be able to have to go to a third stage hearing to hear testimony that they already heard before and found incredible. This would make third stage hearings not a possibility but a certainty. Surely, this is not what the Illinois legislature had in mind when they created the three separate stages of the Post-Conviction Act. This particular stage means that any credibility determination within the context of the record is proper. The trial court did so. Do you have any questions for me, Your Honors? Yes, I do. The comparison of judges and pigs looking for troubles, who do you attribute that to? Or is that your own statement? No, that is actually from the Preeple v. Shelton case. I like it. I like it as well. It's a good quote. Okay, thank you very much for your argument. We'll take the matter under advisement.